IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | CR No.: 3:07-1521-JFA |
| ) | |
| v.                                                              ) | MEMORANDUM |
| ) | OPINION & ORDER |
| JOSHUA MICHAEL COGDELL              ) | |
| _____  ) | |

This matter is before the court on the defendant's *pro se* motion for a reduction in his sentence pursuant to the First Step Act of 2018 and 18 U.S.C. § 3582(c)(1)(A). The defendant contends his sentence is excessive because he was erroneously classified and designated as a career offender. The defendant also argues that if he were sentenced today, he would be subject to a lower sentence because one of his predicate convictions no longer qualifies. The defendant argues that these claims provide extraordinary and compelling reasons for consideration of a reduction in his sentence.

The government has responded in opposition to the motion, and the defendant has replied thereto.

The court has carefully considered the record before it and conducted an individualized analysis of the facts and issues raised by the parties. For the reasons which follow, the defendant's motion (ECF No. 703) is respectfully denied.

*Exhaustion of Remedies*

Before a court may consider a defendant's motion for compassionate release, the defendant must have completed the initial step of requesting that the BOP bring a motion on

their behalf. The defendant may file a motion with the court after (1) fully exhausting all administrative rights to appeal; or (2) after the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A). *See United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021).

Here, however, the defendant is not required to exhaust his remedies on the intervening changes in the law claims because the Warden is bound by U.S. Sentencing Guideline (U.S.S.G.) § 1B1.13 which limits the authority of the Warden to grant compassionate release requests to certain specified categories. A change in sentencing law or change to the career offender law is not within the jurisdiction of the Warden. Therefore, to require the defendant to return to the Warden to request relief that is not within the Warden's power to give would be pointless. This is different from the exhaustion requirement for motions for compassionate release based on medical or family issues.

## STANDARD OF REVIEW

"A sentencing court may not, as a general matter, 'modify a term of imprisonment once it has been imposed.'" *United States v. Hargrove*, 30 F.4th 189, 194 (4th Cir. 2022) (quoting 18 U.S.C. § 3582(c)). Compassionate release is an exception to this rule that permits the sentencing court to reduce a defendant's sentence "if it finds that ... extraordinary and compelling reasons warrant such a reduction" and the reduction aligns with "the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable" as well as "applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

2

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *See United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson*, 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B); *See Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, § 3582(c)(1)(A)(i) provides a statutory vehicle to modify a defendant's sentence. It was originally adopted as part of the Sentencing Reform Act of 1984.

On December 21, 2018, the First Step Act was signed into law. Broadly, the Act's goals were to reform federal prisons and sentencing laws to reduce recidivism, decrease the federal inmate population, and maintain public safety. The First Step Act also expanded the existing compassionate release provisions of federal law by allowing an inmate to move for compassionate release himself, rather than allowing only the Director of the Bureau of Prisons (BOP) to do so. The relevant portion of the First Step Act, codified at 18 U.S.C. § 3582(c)(1)(A), as amended by § 603(b) of the First Step Act, provides:

> [T]he court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) [of Title 18] to the extent that they are

>applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

By its terms, § 3582(c)(1)(A) permits the court to reduce the defendant's term of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if the court first finds that (i) extraordinary and compelling reasons warrant such a reduction; and (ii) such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. In addition, a district court may not grant a sentence reduction under § 3582(c)(1)(A) without considering the § 3553 factors to the extent they are applicable. *United States v. Kibble*, 992 F.3d 326, 332 (4th Cir. 2021).

In *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020), the Fourth Circuit agreed with the Second Circuit in *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020) and found that there is, as of now, no "applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A)," and as a result, district courts are "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise." *McCoy*, 981 F.3d at 284 (citing *Brooker*, 976 F.3d at 230); *see also, Kibble*, 992 F.3d at 331.

A defendant's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). Also, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

When deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court generally proceeds in three steps. *See United States v. High*, 997 F.3d 181, 185–86 (4th Cir. 2021). First, the court determines whether "extraordinary and compelling reasons" support a sentence reduction. Next, the court considers whether a sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission. As noted previously in this order and as set out in *McCoy*, because there is no applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A), district courts are empowered to consider any extraordinary and compelling reason for release that a defendant might raise. Finally, if the court finds that extraordinary and compelling reasons warrant relief, the court must consider the § 3553(a) factors in deciding whether to exercise its discretion to reduce the defendant's term of imprisonment.

Even if the defendant meets the eligibility criteria for compassionate release, this court retains discretion as to whether to grant relief. *See* 18 U.S.C. § 3582(c)(1)(A) (providing the court *may* reduce the term of imprisonment) (emphasis added).

## PROCEDURAL HISTORY

On May 5, 2008, the defendant, along with 5 other individuals, was charged in a nine-count Third Superseding Indictment relating to their participation in an armed bank robbery spree and conspiracy. The defendant was charged in the following Counts:

Count 1:      Armed bank robbery on November 4, 2004 — by force, violence, and intimidation, did take from the person and presence of employees of the Bank of America, Sumter, South Carolina, United States money, belonging to and in the care, custody, control, management, and possession of said bank, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and in committing said offense, the defendants did assault and did put in jeopardy the lives of said employees by means and use of a dangerous weapon, that is, a firearm, in violation of 18 U.S.C. §§ 2113(a) and 2113(d), and 18 U.S.C. § 2;

Count 2:      Use and carry of a firearm during and in relation to, possession of a firearm in furtherance of, a crime of violence on November 4, 2004, in violation of 18 U.S.C. § 924(c)(1), and 18 U.S.C. § 2;

Count 4:      Armed bank robbery on August 17, 2006—by force, violence, and intimidation, did take from the person and presence of employees of the South Carolina Community Bank, Sumter, South Carolina, United States money, belonging to and in the care, custody, control, management, and possession of said bank, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and in committing said offense, the defendants did assault and did put in jeopardy the lives of said employees by means and use of a dangerous weapon, that is, a firearm, in violation of 18 U.S.C. §§ 2113(a) and 2113(d), and 18 U.S.C. § 2;

Count 5:      Use and carry of a firearm during and in relation to, possession of a firearm in furtherance of, a crime of violence on August 17, 2006, in violation of 18 U.S.C. § 924(c)(1), and 18 U.S.C. § 2;

Count 6:      Felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1); and

Count 9:      Conspiracy to take by force, violence, and intimidation in November 2004, from the person and presence of employees of federally insured banks, United States currency belonging to, and in the care, custody, control, management, and possession of said banks, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and to assault and put in jeopardy the lives of said employees by means and use of dangerous weapons, that is, firearms, in violation of 18 U.S.C. §§ 2113(a) and 2113(d), and 18 U.S.C. § 924(c)(1).

The defendant pleaded guilty to Counts 4 and 5 pursuant to a written Plea Agreement (ECF No. 216). The Plea Agreement clearly identified the statutory penalties for the offenses:

18 U.S.C. § 924(c)(1) — First Conviction:

- If *used or carried or possessed*: a minimum term of imprisonment of not less than 5 years and a maximum term of life imprisonment;

- If *brandished*: a minimum term of imprisonment of not less than 7 years and a maximum term of life imprisonment; and

- If *discharged*: a minimum term of imprisonment of not less than 10 years and a maximum term of life imprisonment.

The statute also states that these penalties are *consecutive* to any other term of imprisonment. Additionally, under the aiding/abetting principles of 18 U.S.C. § 2, the aider/abettor is liable for the acts of the principle and is subject to the same penalties.

The government did not file an Information pursuant to 18 U.S.C. § 851. However, two of the defendant's prior state convictions were used as predicate offenses for career offender determination pursuant to USSG § 4B1.1: (1) Assault and Battery of a High and Aggravated Nature after the defendant shot a victim in the abdomen; and (2) possession of more than one ounce of marijuana and unlawful carry of a pistol. The defendant was also convicted of possession with intent to distribute cocaine, and many other state charges, some of which were violent, which did not result in a conviction (PSR at ¶ 64–73).

The United States Probation Office (USPO) prepared a Presentence Report (PSR) (ECF No. 454) which proposed that the defendant's base offense level was 34 as a result of

the career offender designation. The defendant's subtotal criminal history score was 8. However, because at the time the offense was committed the defendant was under the supervision of the South Carolina Department of Probation, Parole and Pardon Services, and because the offense was committed less than 2 years following his release from custody on Assault and Battery of a High and Aggravated Nature (ABHAN), 3 additional history points were added for a total of 11, which established a criminal history category of V. However, because the defendant was a career offender, the criminal history category increased to VI.

On July 16, 2009, this court sentenced the defendant to 308 months which consisted of 188 months as to the armed bank robbery conviction on Count 4, and 120 months (10 years) consecutive as to the § 924(c) firearm discharge and aiding/abetting conviction of Count 5.

The defendant appealed his judgment and conviction. The Fourth Circuit Court of Appeals affirmed this court's decision in a mandate issued on March 29, 2010 (ECF No. 504).

In May 2014, the defendant filed, through counsel, a motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. The defendant sought to vacate his sentence on the grounds that he was erroneously found to be a career offender for a prior conviction of ABHAN and a conviction of second degree burglary. He relied on the subsequent changes in case law in the cases of *United States v. Hemmingway*, 734 F.3d 323 (4th Cir. 2013), *Descamps v. United States*, 133 S.Ct. 2276 (2013), and *Whiteside v. United*

*States*, 775 F.3d 180 (4th Cir. 2014). Finding the defendant's career offender designation was foreclosed because the advisory guidelines were not subject to a vagueness challenge, the court denied the defendant's § 2255 motion. The defendant's subsequent motion to amend or correct his § 2255 motion was construed by this court as an unauthorized or successive motion and dismissed.

Thereafter, the Fourth Circuit Court of Appeals authorized the defendant to file a second or successive § 2255 motion. Due to various related cases pending in the Fourth Circuit, the defendant's motion was held in abeyance several times.[1] Then, on October 10, 2019, this court denied the defendant's successive § 2255 motion. In this order (ECF No. 695), the court found no merit in the defendant's challenges to his § 924(c) conviction or his career offender designation. This court found that the defendant's crime of violence in Count 4 served as a valid basis for the § 924(c) violation of Count 5, both of which the defendant pleaded guilty to.

---

[1] Some of these cases being litigated at the time (and which had the potential to impact the outcome of the defendant's motion) included *Johnson v. United States*, 135 S. Ct. 2551 (2015) (holding the residual clause of 18 U.S.C. § 924(e)(2)(B)(ii) of the Armed Career Criminal Act was unconstitutionally vague); *Welch v. United States*, 136 S. Ct. 1257 (2016) (holding that the decision in *Johnson* applies retroactively to cases on collateral review); *United States v. McNeal*, 818 F.3d 141 (4th Cir. 2016) (finding that because armed bank robbery counts as a crime of violence under the force clause, armed bank robbery is not affected by the holdings in *Johnson*); *Beckles v. United States*, 137 S. Ct. 886 (2017) (holding that advisory sentencing guidelines are not subject to constitutional challenge under the void-for vagueness doctrine); *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018) (holding that the residual clause in 18 U.S.C. § 16 which defines a "crime of violence" was void for vagueness); *United States v. Simms*, 914 F.3d 229 (4th Cir. 2019) (holding that the residual clause found in 18 U.S.C. § 924(c)(3)(B) is unconstitutionally vague); *United States v. Davis*, 139 S. Ct. 2319 (2019) (finding that the substantial risk of force clause of 18 U.S.C. § 924(c)(3)(B) is unconstitutionally vague so that a conviction under § 924 could not be supported by a conviction for *conspiracy* to commit a Hobbs Act robbery); and *United States v. Mathis*, 932 F.3d 242 (4th Cir. 2019) (holding that Hobbs Act robbery is a violent felony and satisfies the force elements clause of § 924(c)(3)(A) so that this clause remains constitutional).

The defendant again appealed this court's order denying his successive § 2255 motion and the Fourth Circuit affirmed such decision in a mandate issued on March 17, 2020 (ECF No. 702).

## DISCUSSION

The defendant is now 37 years old and has served approximately 200 months of his 308-month sentence which he is currently serving at FTC Oklahoma City. His anticipated release date is July 2030.

The defendant filed his present motion for compassionate release on April 4, 2022. The government opposes the defendant's motion, arguing that he has not established extraordinary and compelling reasons to support a sentence reduction, and that the defendant has not met his burden to show that a reduction is warranted in light of the danger that the defendant would pose to the community and the relevant § 3553(a) factors.

### I. *Claims of an Erroneous Sentence under § 924(c)*[2]

The defendant first argues that he should have been subject to a 5-year mandatory consecutive sentence, rather than the 10-year mandatory consecutive sentence he received on the § 924(c) charge. The government contends the defendant is mistaken and this court

---

[2] Prior to the First Step Act, sentences under 18 U.S.C. § 924(c) were "stacked" such that there was a 5 to 10 year mandatory minimum for the first offense and a consecutive 25-year sentence was imposed for subsequent convictions. *United States v. McCoy*, 981 F.3d 271, 275 (4th Cir. 2020). After the First Step Act, the 25-year sentence for subsequent violations was clarified to apply only when a prior § 924(c) conviction arises from a separate case and has already become final. *Id*. That change was not made retroactive for sentences that were imposed before the First Step Act became law. Here, however, the defendant does not have "stacked § 924(c) sentences" that have created a 25-year sentence. The 10 year mandatory consecutive sentence relates to the statutory enhancement for firing the weapon.

10

agrees.

As the government points out, the defendant possessed a firearm when he jumped over the teller desk and demanded money. He was convicted of aiding/abetting and the co-defendant he aided and abetted discharged the firearm in connection with the armed bank robbery. Specifically, the PSR provides that "Cogdell, armed with a firearm, jumped over the bank counter and gathered money from the drawers" while "Coplin, who was also in possession of a firearm, fired a shot into the ceiling." (PSR at ¶ 13). Because the firearm was discharged, and the defendant aided and abetted that conduct, the defendant was subject to a 120-month mandatory consecutive sentence for Count 5. (PSR at ¶ 101, 117). This court applied the appropriate § 924(c) penalty given the defendant's conduct.

In the recent Fourth Circuit case of *United States v. Ferguson*, 55 F.4th 262 (4th Cir. Nov. 29, 2022), the Court held that a claimed sentencing error, such as what the defendant raises here, fails as a matter of law to qualify as an extraordinary and compelling reason for compassionate release. Instead, a defendant must collaterally attack his sentence via the exclusive method in 28 U.S.C. § 2255. Indeed, the defendant has already attempted two challenges to his alleged erroneous sentence via § 2255.

*Ferguson* held that where specific statutes already afford avenues for relief for claims of sentencing errors, a defendant must pursue the same through those statutes, and not through a motion for compassionate release. *Ferguson* unanimously rejected that a defendant's arguments attaching the validity of his convictions or sentence can qualify as an

11

extraordinary and compelling reason for compassionate release.

Morever, the fact that a defendant may be procedurally barred from raising his arguments in a § 2255 motion does not qualify as an extraordinary and compelling reason for compassionate release.  Indeed, this court has already reviewed the defendant's claimed sentencing errors in his previous § 2255 motions.  As a result, if the defendant were to pursue this same claim for a third time under § 2255, it would be considered successive and would require permission from the Fourth Circuit Court of Appeals to file.

## II. *Claim that Career Offender Designation No Longer Applies*

The defendant argues that if he were sentenced today, he would be subject to a lower sentence than he was in 2009 because a 2013 Fourth Circuit now holds that one of his two career offender predicates (South Carolina common law ABHAN) would no longer qualify as a predicate under *United States v. Hemingway* 734 F.3d 323, 326 (4th Cir. 2013).   In 2009, when this court sentenced the defendant (and prior to the 2013 decision in *Hemingway*), the common law ABHAN was appropriately applied as a career offender predicate.

The government concedes that the defendant is correct that in light of non-retroactive intervening case law, common law ABHAN would not serve as a career offender predicate if he were sentenced today under *Hemingway*, 734 F.3d 323, 327 (4th Cir. 2013) (South Carolina common law ABHAN is not a "violent felony" within the meaning of the Armed Career Criminal Act); see also *United States v. Montes-Flores*, 736 F.3d 357, 369 (4th Cir.

12

2013) (South Carolina common law ABHAN is not a "crime of violence" within the meaning of the Sentencing Guidelines).

The government acknowledges that at the defendant's 2009 sentencing, the defendant had two career offender predicates (common law ABHAN and possession with intent to distribute cocaine), and if the defendant were sentenced today, he would only have one, which would not trigger the enhanced career offender penalties.

However, at the time of the defendant's sentencing in 2009, there was no error in the defendant's designation as a career offender, and the changes in *Hemingway* and *Montes-Flores* are not retroactive.

The government provides an estimate of the impact the career offender designation had in this case. At the 2009 sentencing, for the armed bank robbery conviction in Count 4, the defendant's advisory guidelines were 188 to 235 months. For the gun charge under § 924(c) in Count 5, the defendant's advisory Guidelines were 262 to 327, with 120 months being the statutory mandatory consecutive sentence.

If the defendant had not been designated as a career offender at his original sentencing, the base offense level for the armed bank robbery in Count 4 would drop from level 34 to 29. The defendant's criminal history category would change as well. Because he was originally designated as a career offender, his criminal history category was determined to be VI. Otherwise, his 8 criminal history points would have placed him in a criminal history category of IV.

Thus, on Count 4, without the career offender designation, the defendant would have a total offense level of 26 and a criminal history category of IV, producing an advisory Guidelines range of 91 to 115 months. As to Count 5, the 120 month consecutive sentence is mandatory, so that the defendant's total advisory Guidelines range would have likely been 212 to 235 months.

The defendant has served approximately 200 months of his original 308-month sentence.

Several courts have held that a non-retroactive change in the law as it relates to career offender designation does not alone establish an extraordinary and compelling circumstance within the meaning of the statute.

The government points out that this court granted compassionate release in *United States v. Ingram*, 0:00-783-JFA (ECF No. 217) on August 1, 2022 citing, among other factors, that Ingram was a career offender on the day of his sentencing, but that he would no longer be the same due to intervening changes in the law. In that case, this court acknowledged that "*McCoy* did not, however, require that this court reduce a defendant's sentence based upon the mere difference in Guidelines calculations." *Id* at 8. Instead, the court went through numerous other factors in addition to the guidelines calculation that weighed in favor of release. Specifically, this court wrote that it was particularly persuasive that Ingram had served 20 years in prison with no disciplinary history, and that if he were sentenced today, the bottom end of his guidelines would have been 132 months, less than

what he had already served, and that his anticipated release date was relatively soon—in 2025. *Id*. This court also found that Ingram's age (50 years old) was significant in that he was a lower risk of recidivism. *Id*.

This court agrees with the government that the defendant here, however, is different in that he has had 33 disciplinary write ups (detailed below), he has not over-served even a reduced guidelines sentence, he is younger (age 36), his offense involved higher degrees of violence, danger, more defendants, and about ten times the amount stolen, and the § 3553(a) factors generally weigh against release. Also, the defendant in *Ingram* cited numerous other claimed grounds that weighed in favor of release beyond the guidelines change, which courts have considered together with changes in career offender designation whereas the defendant here has identified no other compelling bases for relief.

First, the nature and circumstance of the defendant's offenses are serious, violent, and aggravated. The defendant was a leader and organizer of an armed bank robbery that resulted in two guns being brandished, one being placed to the face of a victim, and one gun being discharged. The defendant led his co-defendants on a flight, through a false story to avoid detection, and to destroy evidence. Second, the history and characteristics of the defendant are not favorable. Prior to the bank robbery at issue, though he was still relatively young, the defendant had been convicted of ABHAN (assault and battery of a high and aggravated nature) for shooting a victim in the abdomen (PSR at ¶ 57); possession of more than one ounce of marijuana and unlawful carry of a pistol for his possession of narcotics and a 9mm

15

pistol (PSR at ¶ 58); and possession with intent to distribute cocaine (PSR at ¶ 59). He had also been the subject of about 12 other state charges, many of which were violent, that did not result in a conviction. (PSR at ¶ 64–73). The government also notes that the BOP has designated the defendant as a high risk of recidivism.

### III. *Factors under § 3553(a)*

A determination whether or not the defendant has demonstrated extraordinary and compelling reasons for consideration of his or her release does not end the court's inquiry. Under Fourth Circuit guidance, this court will now make an individualized assessment of the defendant's case, with specific attention to the factors under 18 U.S.C. § 3553(a) factors, and also with review of the defendant's post-sentencing conduct while incarcerated. The court will address the § 3553(a) factors in turn.

1. *Nature and Circumstances of the Offense*. The nature and circumstances of the defendant's offense is discussed in depth above and incorporated herein.

2. *History and Characteristics of the Defendant*. The defendant was born in 1985 and moved with his parents to Sumter, South Carolina at the age of 8. His parents divorced approximately 5 years later. He has several siblings and reported that he has a close family relationship. He is single and has never married, and has one child who resides with their mother. The defendant reported at the time of sentencing that he was in good health. The defendant attended high school and completed the 10th grade. He later earned his high school degree online. He has a sparse employment history.

*Post Sentencing Conduct*

Attached to the defendant's motion for compassionate release is an inmate education report from the BOP listing all of the educational courses that the defendant has completed, including receiving his GED. As of March 2022, the defendant had commendably completed 40 educational courses.

The defendant did not, however, attach a copy of his BOP disciplinary report to his motion. And, after a review of the BOP report provided by the government, the defendant's post-sentencing conduct is very concerning to this court. A review of his BOP disciplinary records identifies 33 disciplinary infractions that span March 28, 2013 through February 23, 2022. The majority of the defendant's violations appear to be related to sexual misconduct, many of which are related to sex acts performed in front of female staff at the BOP. They include:

1. Incident Exposure on February 23, 2022;

2. Incident Exposure on February 23, 2022;

3. Engaging in Sexual Acts on November 15, 2021;

4. Engaging in Sexual Acts on October 24, 2021;

5. Refusing Work/Program Assignment on June 16, 2021;

6. Refusing Work/Program Assignment on May 20, 2021;

7. Refusing Work/Program Assignment on April 21, 2021;

8. Refusing Work/Program Assignment on April 21, 2021;

9. Engaging in Sexual Acts on December 22, 2020;

10. Engaging in Sexual Acts on October 1, 2020;

11. Refusing to Obey an Order on October 20, 2020;

12. Engaging in Sexual Acts on August 12, 2020;

13. Engaging in Sexual Acts on January 1, 2020;

14. Engaging in Sexual Acts on September 19, 2019;

15. Engaging in Sexual Acts on March 15, 2018;

16. Engaging in Sexual Acts on January 15, 2018;

17. Engaging in Sexual Acts on January 20, 2018;

18. Indecent Exposure on January 13, 2018;

19. Engaging in Sexual Acts on November 30, 2017;

20. Destroy/Dispose of Item-Search on August 11, 2017;

21. Assault Without Serious Injury on August 11, 2017;

22. Engaging in Sexual Acts on August 11, 2017;

23. Disruptive Conduct-High on July 7, 2017;

24. Possessing Drugs/Alcohol on April 24, 2017;

25. Engaging in Sexual Acts on April 24, 2017;

26. Engaging in Sexual Acts on September 14, 2016;

27. Engaging in Sexual Acts on September 6, 2015;

28. Possessing Drugs/Alcohol on July 25, 2015;

29. Assault Without Serious Injury on July 25, 2015;

30. Refusing to Obey an Order on July 25, 2015;

31. Possessing Drugs/Alcohol on October 8, 2014;

32. Refusing to Obey an Order on March 28, 2013; and

33. Being in an Unauthorized Area on March 28, 2013.

3. *Seriousness of the Crimes*. As evidence by the historical facts set out in the PSR involving the defendant's instant conviction, this court regards the defendant's crimes as very serious, fully supportive of a significant sentence.

4. *Whether the Sentence Promotes Respect for the Law and Just Punishment for the Offense*. The court finds a significant sentence is necessary to promote respect for the law and just punishment.

5. *Whether the Sentence Affords Adequate Deterrence to Criminal Conduct*. The court finds that a significant sentence is necessary to provide both general and specific deterrents.

6. *Whether the Sentence Protects the Public from Future Crimes of the Defendant*. The court finds that a significant sentence is necessary to protect the public from future crimes of the defendant.

7. *Need to Avoid Unwarranted Disparity*. Compared with the culpability of similarly situated defendants, the defendant's imposed sentence was and is in line with statutory factors.

CONCLUSION

The court has carefully considered the record before it and conducted an individualized analysis of the facts and issues raised by the parties.

The defendant has not demonstrated extraordinary and compelling reasons for his release. Moreover, even if he had, this court concludes that the § 3553(a) factors, coupled with the defendant's post-sentencing conduct, compel the conclusion that the defendant's immediate release is not appropriate in this case. Accordingly, the defendant's motion for compassionate release (ECF No. 703) is denied.

IT IS SO ORDERED.

May 22, 2023  
Columbia, South Carolina

Joseph F. Anderson, Jr.  
United States District Judge