IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CR No.: 3:07-1521-JFA |
| | ) | |
| v. | ) | MEMORANDUM |
| | ) | OPINION & ORDER |
| JOSHUA MICHAEL COGDELL | ) | |
| _____ | ) | |

This matter is before the court on the defendant's second *pro se* motion for a reduction in his sentence pursuant to the First Step Act of 2018 and 18 U.S.C. § 3582(c)(1)(A) (ECF No. 737). The defendant contends his sentence is unusually long because he is no longer a career offender. He also claims that his youth at the time of his offense and his rehabilitation while incarcerated provide extraordinary and compelling reasons for consideration for compassionate release.

The government has responded in opposition to the motion, and the defendant has replied thereto.

The court has carefully considered the record before it and conducted an individualized analysis of the facts and issues raised by the parties. For the reasons which follow, the defendant's motion is denied.

STANDARD OF REVIEW

Courts may not modify a sentence once imposed with few exceptions. 18 U.S.C. § 3582(c). One exception is compassionate release under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act. To grant a compassionate release motion under § 3582(c)(1)(A)(i), the district court must conduct a two-step analysis. *United States v.*

*Centeno-Morales*, 90 F.4th 274, 279 (4th Cir. 2024).   First, the court must find "extraordinary and compelling reasons" warranting a sentence reduction. *United States v. Hargrove*, 30 F.4th 189, 194–95 (4th Cir. 2022).   Second. after a district court finds that an "extraordinary and compelling" reason for sentence modification exists, it must then evaluate the relevant § 3553(a) factors. *Id.* at 195.   The defendant bears the burden to establish that he or she is eligible for a sentence reduction under § 3582. *Centeno-Morales*, 90 F.4th at 279.

The court must also determine that such a reduction would be consistent with "applicable policy statements issued by the Sentencing Commission." *United States v. Davis*, 99 F.4th 647, 654 (4th Cir. 2024).   Relevant here, an amended Sentencing Guidelines policy statement went into effect in November 2023 and provides criteria for determining the existence of extraordinary and compelling reasons for release. Generally, the list of circumstances qualifying as extraordinary and compelling falls into several categories: (1) the defendant's medical circumstances; (2) the defendant's age; (3) the defendant's family circumstances; (4) whether the defendant was the victim of certain abuse while in custody; (5) any other circumstances or combination of circumstances that, when considered by themselves or together with any of the preceding categories, are similar in gravity; and (6) an unusually long sentence if the defendant meets certain conditions. U.S.S.G. § 1B1.13(b).

Specifically, subsection six states:

**(6) Unusually Long Sentence.** -- If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that

2

has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b)(6).

### *Exhaustion of Remedies*

Before a court may consider a defendant's motion for compassionate release, the defendant must have completed the initial step of requesting that the Bureau of Prisons (BOP) bring a motion on his behalf. The defendant may file a motion with the court: (1) after fully exhausting all administrative rights to appeal; or (2) after the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. *See United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021); 18 U.S.C. § 3582(c)(1)(A).

The government concedes that the defendant has exhausted his administrative remedies. Thus, the court will proceed to review the matters on the merits.

### PROCEDURAL HISTORY

On May 5, 2008, the defendant, along with five other individuals, were charged in a nine count Third Superseding Indictment relating to their participation in an armed bank robbery spree and conspiracy. The defendant was charged in the following Counts:

Count 1:     Armed bank robbery on November 4, 2004 — by force, violence, and intimidation, did take from the person and presence of employees of the Bank of America, Sumter, South Carolina, United States money, belonging to and in the care, custody, control, management, and possession of said bank, the deposits of which were then insured by the Federal Deposit

Insurance Corporation, and in committing said offense, the defendants did assault and did put in jeopardy the lives of said employees by means and use of a dangerous weapon, that is, a firearm, in violation of 18 U.S.C. §§ 2113(a) and 2113(d), and 18 U.S.C. § 2;

Count 2:     Use and carry of a firearm during and in relation to, possession of a firearm in furtherance of, a crime of violence on November 4, 2004, in violation of 18 U.S.C. § 924(c)(1), and 18 U.S.C. §2

Count 4:     Armed bank robbery on August 17, 2006—by force, violence, and intimidation, did take from the person and presence of employees of the South Carolina Community Bank, Sumter, South Carolina, United States money, belonging to and in the care, custody, control, management, and possession of said bank, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and in committing said offense, the defendants did assault and did put in jeopardy the lives of said employees by means and use of a dangerous weapon, that is, a firearm, in violation of 18 U.S.C. §§ 2113(a) and 2113(d), and 18 U.S.C. § 2;

Count 5:     Use and carry of a firearm during and in relation to, possession of a firearm in furtherance of, a crime of violence on August 17, 2006, in violation of 18 U.S.C. § 924(c)(1), and 18 U.S.C. § 2;

Count 6:     Felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1); and

Count 9:     Conspiracy to take by force, violence, and intimidation in November 2004, from the person and presence of employees of federally insured banks, United States currency belonging to, and in the care, custody, control, management, and possession of said banks, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and to assault and put in jeopardy the lives of said employees by means and use of dangerous weapons, that is, firearms, in violation of 18 U.S.C. §§ 2113(a) and 2113(d), and 18 U.S.C. § 924(c)(1).

4

The defendant pleaded guilty to Counts 4 and 5 pursuant to a written Plea Agreement. (ECF No. 216). The Plea Agreement clearly identified the statutory penalties for the offenses including those related to Count 5:

18 U.S.C. § 924(c)(1) — First Conviction:

- If *used or carried or possessed*: a minimum term of imprisonment of not less than 5 years and a maximum term of life imprisonment;

- If *brandished*: a minimum term of imprisonment of not less than 7 years and a maximum term of life imprisonment; and

- If *discharged*: a minimum term of imprisonment of not less than 10 years and a maximum term of life imprisonment.

The statute also states that these penalties are *consecutive* to any other term of imprisonment. Additionally, under the aiding/abetting principles of 18 U.S.C. § 2, the aider/abettor is liable for the acts of the principle and is subject to the same penalties.

The government did not file an Information pursuant to 18 U.S.C. § 851. However, two of the defendant's prior state convictions were used as predicate offenses for career offender determination pursuant to U.S.S.G. § 4B1.1: (1) Assault and Battery of a High and Aggravated Nature (ABHAN) after the defendant shot a victim in the abdomen; and (2) possession of more than one ounce of marijuana and unlawful carry of a pistol. The defendant was also convicted of possession with intent to distribute cocaine, and many other state charges—some of which were violent—which did not result in a conviction (PSR at ¶ 64–73).

The United States Probation Office (USPO) prepared a Presentence Report (PSR) (ECF No. 454) which proposed that the defendant's base offense level was 34 as a result

of the Career Offender designation. The defendant's subtotal criminal history score was 8. Because at the time the offense was committed the defendant was under the supervision of the South Carolina Department of Probation, Parole and Pardon Services, and because the offense was committed less than 2 years following his release from custody on ABHAN, three additional history points were added for a total of 11 points[1] which established a criminal history category of V. However, because the defendant was designated as a career offender, the criminal history category increased to VI.

On July 16, 2009, this court sentenced the defendant to 308 months which consisted of 188 months as to the armed bank robbery conviction on Count 4, and 120 months (10 years) consecutive as to the § 924(c) firearm discharge and aiding/abetting conviction of Count 5.

---

[1] On May 23, 2024, the United States Probation Office prepared a Sentence Reduction Report (SRR) (ECF No. 732) in light of recent amendments to the Sentencing Guidelines. In particular, Retroactive U.S. Sentencing Guideline § 4A1.1(e), took effect November 1, 2023. Part A of the amendment addresses "Status Points," decreasing them by 1 point for individuals with 7 or more criminal history points and eliminating status points for those with 6 or fewer criminal history points. Subpart 1 of Part B creates a new § 4C1.1 guideline that provides a decrease of 2 offense levels for "Zero-Point Offenders" (those with no criminal history points) whose offense did not involve specified aggravating factors. Parts A and B, subpart 1 of the criminal history amendment both have retroactive effect. Under Amendment 821, the defendant's total offense level remains at 31. The defendant's criminal history points are decreased from 11 to 10 (U.S.S.G. § 4A1.1(e)). However, due to the career offender status, the defendant's criminal history category remains at VI. Amendment 821 does not apply to the defendant's sentence because it does not have the effect of lowering the defendant's applicable Guideline range under U.S.S.G. § 1B1.10(a)(2)(B). Although the USPO prepared SRRs for the court on all defendants in custody who received status points at sentencing, the defendant did not file a separate motion requesting relief under Amendment 821.

The defendant appealed his judgment and conviction. The Fourth Circuit Court of Appeals affirmed this court's decision in a mandate issued on March 29, 2010 (ECF No. 504).

In May 2014, the defendant filed, through counsel, a motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. The defendant sought to vacate his sentence on the grounds that he was erroneously found to be a career offender for a prior conviction of ABHAN and a conviction of second degree burglary. He relied on the subsequent changes in case law in *United States v. Hemmingway*, 734 F.3d 323 (4th Cir. 2013), *Descamps v. United States*, 133 S.Ct. 2276 (2013), and *Whiteside v. United States*, 775 F.3d 180 (4th Cir. 2014). Finding the defendant's career offender designation was foreclosed because the advisory guidelines were not subject to a vagueness challenge, this court denied the defendant's § 2255 motion. The defendant's subsequent motion to amend or correct his § 2255 motion was construed by this court as an unauthorized or successive motion and dismissed. Thereafter, the Fourth Circuit Court of Appeals authorized the defendant to file a second or successive § 2255 motion.

Due to various related cases pending in the Fourth Circuit, the defendant's § 2255 motion was held in abeyance several times.[2] On October 10, 2019, this court denied the

---

[2] Some of these cases being litigated at the time (and which had the potential to impact the outcome of the defendant's motion) included *Johnson v. United States*, 135 S. Ct. 2551 (2015) (holding the residual clause of 18 U.S.C. § 924(e)(2)(B)(ii) of the Armed Career Criminal Act was unconstitutionally vague); *Welch v. United States*, 136 S. Ct. 1257 (2016) (holding that the decision in *Johnson* applies retroactively to cases on collateral review); *United States v. McNeal*, 818 F.3d 141 (4th Cir. 2016) (finding that because armed bank robbery counts as a crime of violence under the force clause, armed bank robbery is not affected by the holdings in *Johnson*); *Beckles v. United States*, 137 S. Ct. 886 (2017) (holding that advisory sentencing guidelines are not subject to constitutional challenge under the void-for vagueness doctrine); *Sessions v. Dimaya*, 138 S. Ct.

defendant's second § 2255 motion. In that order (ECF No. 695), this court found no merit in the defendant's challenges to his § 924(c) conviction or his career offender designation. This court determined that the defendant's crime of violence in Count 4 served as a valid basis for the § 924(c) violation of Count 5, both of which the defendant pleaded guilty to.

The defendant again appealed this court's order denying his successive § 2255 motion and the Fourth Circuit affirmed such decision in a mandate issued on March 17, 2020. (ECF No. 702).

## DISCUSSION

The defendant is now 39 years old, has served over 225 months of his 308-month sentence, and is currently housed at United States Penitentiary McCreary. He has received credit for time served since September 9, 2006 and his anticipated release date from the BOP is in June 2030.

The defendant filed his present motion for compassionate release on December 10, 2024. The government opposes the motion, arguing that the defendant has not established an extraordinary and compelling reason to support a sentence reduction; that the defendant has not met his burden to show that a reduction is warranted in light of the danger that the

---

1204 (2018) (holding that the residual clause in 18 U.S.C. § 16 which defines a "crime of violence" was void for vagueness); *United States v. Simms*, 914 F.3d 229 (4th Cir. 2019) (holding that the residual clause found in 18 U.S.C. § 924(c)(3)(B) is unconstitutionally vague); *United States v. Davis*, 139 S. Ct. 2319 (2019) (finding that the substantial risk of force clause of 18 U.S.C. § 924(c)(3)(B) is unconstitutionally vague so that a conviction under § 924 could not be supported by a conviction for *conspiracy* to commit a Hobbs Act robbery); and *United States v. Mathis*, 932 F.3d 242 (4th Cir. 2019) (holding that Hobbs Act robbery is a violent felony and satisfies the force elements clause of § 924(c)(3)(A) so that this clause remains constitutional).

defendant would pose to the community; and that the relevant § 3553(a) factors counsel against release.

As an initial matter, the government contends that the defendant's motion for compassionate release should be denied because the Sentencing Commission exceeded its authority in enacting U.S.S.G. § 1B1.13(b)(6) and, therefore, it cannot form a valid basis for granting compassionate release.

In considering the government's arguments that U.S.S.G. § 1B1.13(b)(6) is an invalid basis for compassionate release, this court follows the lead of other courts in this Circuit, which have addressed similar arguments. *See United States v. Spencer*, No. 2:11-CR-30, 2025 WL 572398, at *5 (E.D. Va. Feb. 13, 2025); *United States v. Fields*, No. 5:12-CR-00002, 2024 WL 4520353, at *6–*7 (W.D. Va. Oct. 17, 2024). These courts found that the enactment of the Policy Statement, including § 1B1.13(b)(6), are in line with prior Fourth Circuit precedent.  *See Spencer*, 2025 WL 572398 (citing *United States v. McCoy*, 981 F.3d 271, 286–87 (4th Cir. 2020); *United States v. Davis*, 99 F.4th 647, 658 (4th Cir. 2024)); *Fields*, 2024 WL 4520353, at *6–*7 (citing *Davis*, 99 F.4th at 654). The court in *Fields* further explained that Congress presumably reviewed § 1B1.13(b)(6) and (c) during the 180- day period the revised guidelines were under review and took no action. 2024 WL 4520353 at *8.  Moreover, Congress retains the authority to take action using its authority to override § 1B1.13(b)(6) and (c) if it believes it runs afoul of the doctrine of the separation of powers and has chosen not to do so. *Id*.

This court likewise finds § 1B1.13(b)(6) and (c) are consistent with the pertinent provisions of existing Federal statutes and form a valid basis for seeking compassionate release at this time. The court will proceed to analyze defendant's motion on the merits.

In the pending motion, Cogdell claims extraordinary and compelling circumstances support release from prison for three reasons. First, he claims his sentence is unusually long because he was a career offender at the time of his sentencing, a designation that would not apply today. Second, he claims he was young at the time of the offense conduct. Third, Cogdell claims post-conviction rehabilitation supports his request for early release. As shown below, each argument is unavailing.

## I. *Unusually Long Sentence*

The defendant's first claim is that his sentence is unusually long because he is no longer a career offender. He also contends that he should have been subject to a 5-year mandatory consecutive sentence, rather than the 10-year mandatory consecutive sentence he received on the § 924(c) charge[3] in Count 5.

In its May 2023 order (ECF No. 727) denying the defendant's first motion for compassionate release, this court addressed and denied the defendant's claim that he was erroneously sentenced on the § 924(c) firearm charge. Today, however, the defendant

---

[3] Prior to the First Step Act, sentences under 18 U.S.C. § 924(c) were "stacked" such that there was a 5 to 10 year mandatory minimum for the first offense and a consecutive 25-year sentence was imposed for subsequent convictions. *United States v. McCoy*, 981 F.3d 271, 275 (4th Cir. 2020). After the First Step Act, the 25-year sentence for subsequent violations was clarified to apply only when a prior § 924(c) conviction arises from a separate case and has already become final. *Id.* That change was not made retroactive for sentences that were imposed before the First Step Act became law. Here, however, the defendant does not have "stacked § 924(c) sentences" that have created a 25-year sentence. The defendant's 10-year mandatory consecutive sentence relates to the statutory enhancement for the firing of a weapon during the offense.

states that he is not claiming a sentencing error, but rather he is relying on U.S.S.G. § 1B1.13(b)(6) which came into effect in November 2023 after the defendant's first motion for compassionate release was denied. While the defendant is still seeking the same relief via the new Guideline policy, his claim today remains unavailing.

During the offense in this case, the defendant possessed a firearm when he jumped over the teller desk and demanded money. He was convicted of aiding/abetting and the co-defendant he aided and abetted discharged the firearm in connection with the armed bank robbery. Specifically, the PSR stated that "Cogdell, armed with a firearm, jumped over the bank counter and gathered money from the drawers" while "Coplin, who was also in possession of a firearm, fired a shot into the ceiling." (PSR at ¶ 13). Although the defendant avers that the discharge of a firearm was never proven, he readily admitted this occurred in his guilty plea and at his sentencing hearing.

Because the firearm was discharged by the co-defendant, and the defendant aided and abetted that conduct, the defendant was subject to a 120-month mandatory consecutive sentence for Count 5. (PSR at ¶ 101, 117). As it explained in its previous order on the same issue, this court applied the appropriate § 924(c) penalty at sentencing.

However, the defendant is partially correct that if he were sentenced today, he would likely be subject to a lower sentence than he was in 2009 because now, under intervening case law, common law ABHAN would not serve as a career offender predicate. *See United States v. Hemingway*, 734 F.3d 323, 327 (4th Cir. 2013) (South Carolina common law ABHAN is not a "violent felony" within the meaning of the Armed Career Criminal Act); *see also United States v. Montes-Flores*, 736 F.3d 357, 369 (4th Cir. 2013) (South Carolina

common law ABHAN is not a "crime of violence" within the meaning of the Sentencing Guidelines).

At the defendant's 2009 sentencing, the defendant had two valid predicates (common law ABHAN and possession with intent to distribute cocaine) to support his career offender designation. If the defendant were sentenced today, he would only have one predicate offense, which would not trigger the enhanced career offender penalties. Accordingly, Cogdell's guidelines, if sentenced today, would greatly differ than at the time of his sentencing. As this court previously explained:

> At the 2009 sentencing, for the armed bank robbery conviction in Count 4, the defendant's advisory guidelines were 188 to 235 months. For the gun charge under § 924(c) in Count 5, the defendant's advisory Guidelines were 262 to 327, with 120 months being the statutory mandatory consecutive sentence.

> If the defendant had not been designated as a career offender at his original sentencing, the base offense level for the armed bank robbery in Count 4 would drop from level 34 to 29. The defendant's criminal history category would change as well. Because he was originally designated as a career offender, his criminal history category was determined to be VI. Otherwise, his 8 criminal history points would have placed him in a criminal history category of IV.

> Thus, on Count 4, without the career offender designation, the defendant would have a total offense level of 26 and a criminal history category of IV, producing an advisory Guidelines range of 92 to 115 months. As to Count 5, the 120 month consecutive sentence is mandatory, so that the defendant's total advisory Guidelines range would have likely been 212 to 235 months.

(ECF No. 727 at 13-14).

Thus, if sentenced anew today, Cogdell's sentence could possibly be 96 months lower than his original 308 month sentence—assuming he received a sentence at the low end of the guidelines as he did when originally sentenced. In some instances, a 96-month

(8 year) disparity has served as the basis for compassionate release. *See United States v. Crawley*, No. 24-6257, 2025 WL 1634789, at *4 (4th Cir. June 10, 2025) ("[W]e accept that this 8-year disparity does constitute a 'gross disparity' under the policy statement."). However, the court is mindful that U.S.S.G. § 1B1.13(b)(6) requires "full consideration of the defendant's individualized circumstances."[4]

This court has not hesitated to grant compassionate release in other cases where defendants have had more appropriate individualized circumstances. For instance, the government points out that this court granted compassionate release in *United States v. Ingram*, 0:00-783-JFA (ECF No. 217) on August 1, 2022 citing, among other factors, that Ingram was a career offender on the day of his sentencing, but that he would no longer be the same due to intervening changes in the law. In that case, this court acknowledged that that applicable law *"did not, however, require that this court reduce a defendant's sentence based upon the mere difference in Guidelines calculations." Id* at 8. Instead, the court went through numerous other factors in addition to the guidelines calculation that weighed in favor of release. Specifically, this court wrote that it was particularly persuasive that Ingram had served 20 years in prison with no disciplinary history, and that if he were sentenced today, the bottom end of his guidelines would have been 132 months, less than what he had already served, and that his anticipated release date was relatively soon—in 2025. *Id*. This court also found that Ingram's age (50 years old) was significant in that he was a lower risk of recidivism. *Id*.

---

[4] U.S.S.G. § 1B1.13(b)(6) also requires that a defendant first serve 10 years to be eligible for such relief. Here, there is no dispute Cogdell has served over 10 years.

This court agrees with the government that the defendant here, however, is different in that he has had 53 disciplinary write ups (detailed below), he has not over-served even a reduced guidelines sentence, he is younger (age 36), his offense involved higher degrees of violence, danger, more defendants, and about ten times the amount stolen, and the § 3553(a) factors generally weigh against release. Also, the defendant in *Ingram* cited numerous other claimed grounds that weighed in favor of release beyond the guidelines change, which courts have considered together with changes in career offender designation whereas the defendant here has identified no other compelling bases for relief.

Here, the nature and circumstance of the defendant's offenses are serious, violent, and aggravated. The defendant was a leader and organizer of an armed bank robbery that resulted in two guns being brandished, one being placed to the face of a victim, and one gun being discharged. The defendant led his co-defendants on a flight, through a false story to avoid detection, and to destroy evidence. Second, the history and characteristics of the defendant are not favorable. Prior to the bank robbery at issue, though he was still relatively young, the defendant had been convicted of ABHAN (assault and battery of a high and aggravated nature) for shooting a victim in the abdomen (PSR at ¶ 57); possession of more than one ounce of marijuana and unlawful carry of a pistol for his possession of narcotics and a 9mm pistol (PSR at ¶ 58); and possession with intent to distribute cocaine (PSR at ¶ 59). He had also been the subject of about 12 other state charges, many of which were violent, that did not result in a conviction. (PSR at ¶ 64–73). The government also notes that the BOP has designated the defendant as a high risk of recidivism.

14

Thus, the disparity in sentencing, when considered alongside Cogdell's individualized circumstances, counsel against compassionate releases. Accordingly, his motion must fail. Moreover, as discussed below, even if Cogdell had presented an extraordinary and compelling reason, the §3553(a) factors counsel against a reduced sentence.

## II. *Youth at the Time of the Offense*

The defendant next claims that at the time he committed the offenses in this case he was only 20 years old and that his brain was not fully developed. The government correctly points out that at sentencing, this court was fully aware of the defendant's age, personal and family history, physical condition, mental and emotional health, substance abuse history, educational and employment history, financial condition, and criminal history while under the age of 18 as that information was set out in the Presentence Report. Those factors were before the court at the defendant's sentencing and the court seriously contemplated all the § 3553(a) factors before it. In fact, although the defendant's Guideline range was 308 to 355 months, this court sentenced the defendant to only 308 months—the lowest end of the Guidelines.[5]

---

[5] According to the transcript of the sentencing hearing (ECF No. 477), the court adopted the PSR and overruled the defendant's one objection relating to an earlier criminal case. The court stated that it was sentencing the defendant to the low end of the Guidelines because, among other things, the defendant pleaded guilty and accepted responsibility; his co-defendant actually shot the weapon in the bank; and despite the fact that the court had declared him a hostile witness in his co-defendant's trial, the defendant was helpful in getting the gun authenticated for purposes of admissibility at that trial.

In light of the court's review of the § 3553 factors and post-sentencing conduct discussed below, the court finds that the defendant's claim of youth in support of his motion for compassionate release presents no extraordinary or compelling reason for this court's consideration.

### III. *Rehabilitation*

Because the defendant has failed to present an extraordinary and compelling reason to support his motion, claims of rehabilitation alone are insufficient to advance his position. U.S.S.G. § 1B1.13(d); 28 U.S.C. § 944(t) ("Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.").

Moreover, the defendant's claim of rehabilitation is belied by his post-sentencing conduct discussed in the § 3553(a) factors below.

### IV. *Factors Under 18 U.S.C. § 3553(a)*

A determination as to whether or not a defendant has demonstrated extraordinary and compelling reasons for consideration of his or her release does not end the court's inquiry. Under Fourth Circuit guidance, this court must also make an individualized assessment of the defendant's case, with specific attention to the factors under 18 U.S.C. § 3553(a), and also with review of the defendant's post-sentencing conduct while incarcerated. All of the factors have remained relatively the same since the original sentencing, with the exception of the defendant's post-sentencing conduct. The court will restate the § 3553 factors set out in its first order denying compassionate release and incorporate the most recent post-sentencing conduct the defendant has since engaged in.

1.  *Nature and Circumstances of the Offense*. The nature and circumstances of the defendant's offense are discussed earlier in this order and incorporated herein.   Needless to say, the defendant's offenses were serious, violent, and aggravated.  The defendant was a leader and organizer of an armed bank robbery that resulted in two guns being brandished, one being placed to the face of a victim, and one gun being discharged. The defendant led his co-defendants on a flight, through a false story to avoid detection, and to destroy evidence.

2.  *History and Characteristics of the Defendant*.   Prior to the bank robbery at issue, though he was still relatively young, the defendant had been convicted previously of ABHAN for shooting a victim in the abdomen (PSR at ¶ 57); possession of more than one ounce of marijuana and unlawful carry of a pistol for his possession of narcotics and a 9mm pistol (PSR at ¶ 58); and possession with intent to distribute cocaine (PSR at ¶ 59).  The defendant had also been the subject of approximately 12 other state charges—many of which were violent—that did not result in a conviction. (PSR at ¶ 64–73).  The government has noted that the BOP designated the defendant at a high risk for recidivism.

The defendant was born in 1985 and moved with his parents to Sumter, South Carolina at the age of 8.  His parents divorced approximately 5 years later.  He has several siblings and reported that he has a close family relationship.  He is single and has never married, and has one child who resides with their mother.  The defendant reported at the time of sentencing that he was in good health.  The defendant attended high school and completed the 10th grade.  He later earned his GED.  His employment history was sparse.

*Post Sentencing Conduct*

Attached to the defendant's first motion for compassionate release was an inmate education report from the BOP listing all of the educational courses that the defendant had completed, including receiving his GED.  By March 2022, the defendant had completed 40 educational courses.  The defendant did not provide a copy of any additional educational, work history, or disciplinary reports in his present motion for compassionate release.

In its June 18, 2025 response (ECF No. 755), the government provides an updated BOP report on the defendant's post-sentencing conduct.  The prior BOP records identified a total of 33 disciplinary infractions that spanned the period from March 28, 2013 through February 23, 2022.[5]  Since that first BOP report from early 2022, the defendant has incurred 20 additional infractions with the most recent one committed in March 2025.  The majority of the defendant's violations are for sexual misconduct and include:

1. Indecent Exposure on March 17, 2025
2. Engaging in Sexual Acts on August 9, 2024
3. Engaging in Sexual Acts on May 13, 2024
4. Refusing to Obey an Order on July 2, 2024
5. Engaging in Sexual Acts on March 24, 2024
6. Engaging in Sexual Acts on February 29, 2024
7. Assaulting Without Serious Injury on November 1, 2023, (in which Cogdell punched BOP staff in the upper arm)
8. Assaulting Without Serious Injury on November 1, 2023,(in which Cogdell punched BOP staff in the mouth);
9. Refusing Work/Program Assignment on November 1, 2023
10. Refusing Work/Program Assignment on October 8, 2023
11. Refusing Work/Program Assignment on September 4, 2023
12. Refusing Work/Program Assignment on August 24, 2023
13. Engaging in Sexual Acts on June 14, 2023

---

[5]  The BOP records do not reveal if there were any disciplinary infractions during the time period from September 2006 (when he was first in custody) through February 2013.

14.    Indecent Exposure on May 4, 2023
15.    Engaging in Sexual Acts on February 21, 2023
16.    Indecent Exposure on February 11, 2023
17.    Refusing Work/Program Assignment on November 30, 2023
18.    Giving/Accepting Money Without Authorization on August 3, 2022
19.    Engaging in Sexual Acts on July 30, 2022
20.    Engaging in Sexual Acts on July 3, 2022
21.    Indecent Exposure on February 23, 2022
22.    Indecent Exposure on February 23, 2022
23.    Engaging in Sexual Acts on November 15, 2021
24.    Engaging in Sexual Acts on October 24, 2021
25.    Refusing Work/Program Assignment on June 16, 2021
26.    Refusing Work/Program Assignment on May 20, 2021
27.    Refusing Work/Program Assignment on April 21, 2021
28.    Refusing Work/Program Assignment on April 21, 2021
29.    Engaging in Sexual Acts on December 22, 2020
30.    Engaging in Sexual Acts on October 1, 2020
31.    Refusing to Obey an Order on October 20, 2020
32.    Engaging in Sexual Acts on August 12, 2020
33.    Engaging in Sexual Acts on January 1, 2020
34.    Engaging in Sexual Acts on September 19, 2019
35.    Engaging in Sexual Acts on March 15, 2018
36.    Engaging in Sexual Acts on January 15, 2018
37.    Engaging in Sexual Acts on January 20, 2018
38.    Indecent Exposure on January 13, 2018
39.    Engaging in Sexual Acts on November 30, 2017
40.    Destroy/Dispose of Item-Search on August 11, 2017
41.    Assault Without Serious Injury on August 11, 2017
42.    Engaging in Sexual Acts on August 11, 2017
43.    Disruptive Conduct-High on July 7, 2017
44.    Possessing Drugs/Alcohol on April 24, 2017
45.    Engaging in Sexual Acts on April 24, 2017
46.    Engaging in Sexual Acts on September 14, 2016
47.    Engaging in Sexual Acts on September 6, 2015
48.    Possessing Drugs/Alcohol on July 25, 2015
49.    Assault Without Serious Injury on July 25, 2015
50.    Refusing to Obey an Order on July 25, 2015
51.    Possessing Drugs/Alcohol on October 8, 2014
52.    Refusing to Obey an Order on March 28, 2013
53.    Being in an Unauthorized Area on March 28, 2013

In his reply brief, the defendant states that the government "has made a big deal out of the defendant's behavior while incarcerated" and that "it should not be the overriding factor to decline a reduction in sentence." The defendant then avers that he suffers from "exhibitionist disorder" which he says is a recognized mental health condition. He states that he needs help, not scorn, for his behavior, and that he will seek help for his exhibitionist order *when released*. He claims that the BOP does not give him treatment for this condition. The defendant has not provided any medical records to support such a diagnosis or proof that he has not been able to obtain treatment within the BOP.

In this court's view, the defendant's post-sentencing behavior *is* a big deal, especially when the defendant asks this court to release him immediately back into society. Taking classes during incarceration, while commendable, is expected of prisoners. They are also expected to abide by the federal prison's disciplinary code. If a prisoner cannot function appropriately in a regimented penitentiary setting and habitually fails to abide by its rules, it is very unlikely that he or she will be able to do so in the community.

This court agrees with the government that the defendant's behavior has not improved while incarcerated, but has worsened. That fact belies any of the defendant's claims of rehabilitation. Moreover, the defendant is now 39 years old and still having serious disciplinary issues in prison, such that any argument with regard to age is without merit.

3. *Seriousness of the Crimes*. As evidenced by the historical facts set out in the PSR involving the defendant's instant conviction, this court regards the defendant's crimes as very serious, fully supportive of a significant sentence.

4. *Whether the Sentence Promotes Respect for the Law and Just Punishment for the Offense*.  The court finds a significant sentence is necessary to promote respect for the law and just punishment.

5. *Whether the Sentence Affords Adequate Deterrence to Criminal Conduct*.  The court finds that a significant sentence is necessary to provide both general and specific deterrents.

6. *Whether the Sentence Protects the Public from Future Crimes of the Defendant.* The court finds that a significant sentence is necessary to protect the public from future crimes of the defendant.

7.    *Need to Avoid Unwarranted Disparity*.  Compared with the culpability of similarly situated defendants, the defendant's imposed sentence was and is in line with statutory factors.

8.    *Need to Provide the Defendant with Adequate Medical Care...Or Other Correctional Treatment in the Most Effective Manner (18 U.S.C. § 3553(a)(2)(D)*.  It is clear to this court that the defendant is in need of further medical care or other correctional treatment in light of his ongoing, serious disciplinary infractions discussed herein.

9*. Need to Provide Restitution to Any Victims of the Offense*.  The defendant was ordered to pay restitution in the amount of $6,650.

## CONCLUSION

The court has carefully considered the record before it and conducted an individualized analysis of the facts and issues raised by the parties.

The defendant has not demonstrated an extraordinary and compelling reason for his release. Moreover, even if he had, this court concludes that the § 3553(a) factors, coupled with the defendant's disturbing post-sentencing conduct, compel the conclusion that the defendant's release is not appropriate. Accordingly, the defendant's motion for compassionate release (ECF No. 737) is denied.

IT IS SO ORDERED.

August 1, 2025                    Joseph F. Anderson, Jr.
Columbia, South Carolina         United States District Judge